NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0798n.06

No. 10-3063

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Nov 30, 2011**

LEONARD GREEN, Clerk

| | |
|---|---|
| Gonzalo C. Perez-Morales, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **ON PETITION** FOR REVIEW OF AN |
| | ) ORDER OF THE BOARD OF |
| Eric H. Holder, Jr., United States Attorney | ) IMMIGRATION APPEALS |
| General , | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |

BEFORE:     MERRITT, BOGGS, and CLAY,  Circuit Judges.


   **MERRITT, Circuit Judge.**  Petitioner Gonzalo Perez-Morales seeks review of a decision

of the Board of Immigration Appeals dated December 31, 2009.  In that decision, the Board

dismissed Perez-Morales's appeal and affirmed the decision of the Immigration Judge denying his

applications for asylum and withholding of removal under the Immigration and Nationality Act, 8

U.S.C. §§ 1158(a)(1), 1231(b)(3)(A) (1965),[1] and protection under the United Nations Convention

Against Torture.[2]   Perez-Morales seeks review on the following grounds:  (1) an incomplete

---

   [1]  Perez-Morales' applications for asylum and withholding of removal are governed by the REAL ID Act's
amendments to the Immigration and Nationality Act.  *See* REAL ID Act of 2005, Div. B. of Pub. L. No. 109-13, 119
Stat. 231.

   [2]  *See* United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or
Punishment, 1465 U.N.T.S. 85, G.A. Res. 39/46, 39th Sess., U.N. GAOR Supp. No. 51, U.N. Doc. A/39/51, at 197,
(Dec. 10, 1984).

transcript of his removal proceeding denied him due process of law by preventing him from establishing that an extraordinary circumstance excused his delay in filing for asylum; (2) the Immigration Judge and the Board both erred in finding that he failed to qualify for withholding of removal because it is more likely than not that he will be persecuted if he returns to Guatemala; and (3) the Immigration Judge and the Board also erred in finding that he was ineligible for protection under the Convention Against Torture because it is more likely than not that he will be tortured if he returns to Guatemala. Although we are sympathetic to Perez-Morales' plight, his arguments are unconvincing. Accordingly, we affirm the Board's decision.

## I. Background

Perez-Morales illegally entered the United States on February 14, 1997.[3] On October 8, 2005, the Department of Homeland Security served Perez-Morales with a Notice to Appear in immigration court to contest the charge that he was removable pursuant to the Immigration and Nationality Act as an alien present in the United States who had been neither admitted nor paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). On March 1, 2007, Perez-Morales jointly filed applications for asylum, withholding of removal, and protection under the Convention Against Torture. He thereafter testified in support of his applications on March 19, 2008. The Immigration Judge denied all three. With respect to his application for asylum, the judge determined that he had failed to show either a changed or extraordinary circumstance that would excuse his delay in filing outside the one-year window. *See* 8 C.F.R. §§ 1208.4(a)(2), (4), (5) (2011). The judge denied on the merits his

---

[3] Perez-Morales initially indicated that he had entered the United States on October 1, 2000, but thereafter admitted to telling the Customs and Border Agent the wrong date when he was arrested. (Petitioner's Brief at 4.)

applications for withholding of removal and protection under the Convention Against Torture. On appeal, the Board affirmed the Immigration Judge's decision. This petition followed.

## II. Discussion

### 1. Standard of Review

Because the Board issued a separate opinion rather than summarily affirming the Immigration Judge's decision, we review the Board's decision as final. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). However, we also examine the Immigration Judge's decision to the extent that the Board adopted its reasoning. *See id.*; *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006). We review questions of law *de novo* and any factual determinations under a substantial evidence standard. *See Khalili*, 557 F.3d at 435.

### 2. Denial of Due Process

Perez-Morales asserts that an incomplete transcript of his removal proceeding violated his due process rights by denying him meaningful appellate review. We have jurisdiction to review the Board's findings relevant to this issue because Perez-Morales raises a constitutional claim. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Specifically, he contends that a large number of "indiscernible notations" precluded him from arguing that the ineffective assistance of his prior counsel constituted an "extraordinary circumstance" justifying his considerable delay in filing for asylum. (Petitioner's Brief at 14.) According to Perez-Morales, a complete transcript would have allowed him to meet the requirements for asserting such a claim. *See Matter of Lozada*, 19 I&N Dec. 637, 639 (BIA 1988). This conclusion misconstrues the conditions set forth in *Lozada.* Even if a complete transcript had aided it, his claim on appeal would nonetheless have been

procedurally deficient. He did not submit to the Board an affidavit detailing his agreement with his former attorney or show that the attorney had been informed of the allegations and given an opportunity to respond. *See Lazar v. Gonzales*, 500 F.3d 469, 476 (6th Cir. 2006).

Moreover, we agree with the conclusion of both the Immigration Judge and the Board that Perez-Morales has failed to show that omissions in the transcript prejudiced him. Due process in this context requires a petitioner to establish that "a complete and accurate transcript would have changed the outcome of the case." *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007). Such was not the case here. Even conceding that Perez-Morales detrimentally relied on the advice of an attorney who told him, in 1997, that he was ineligible to apply for political asylum – and that this constituted an "extraordinary circumstance" justifying an initial postponement in filing – it cannot explain why Perez-Morales waited another ten years before making his asylum claim. We agree with the Immigration Judge and the Board that this was an unreasonably long delay. *See Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2006) (affirming denial of petitioner's asylum application and reasoning that petitioner's eighteen-month delay in filing her asylum application was unreasonable).

### 3. Denial of Application for Withholding of Removal

Perez-Morales next contends that both the Immigration Judge and the Board improperly denied his application for withholding of removal. Withholding of removal is mandatory if an alien establishes that his "life or freedom will be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *See INS v. Stevic*, 467 U.S. 407, 411 (1984) (citing 8 U.S.C. § 1253(h)(1)). Perez-Morales asserts that gangs

in Guatemala target young men for the purpose of recruiting them. He also asserts that gangs harass

and perpetrate crimes against Christians and other "church going people." (Petitioner's Brief at 20.)

Thus, Perez-Morales' status as "a young Christian male of Guatemala," renders him doubly

vulnerable to gang violence. *Id.* Accepting his statements as true and his fears as legitimate, we

nonetheless agree with the Immigration Judge and the Board that this social group lacks the requisite

particularity and social visibility. *See Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009).

Membership in such a group would encompass a collection of individuals too amorphous and varied

to share a "common, immutable characteristic." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137

(6th Cir. 2010) (quoting *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 546 (6th Cir. 2003)). Moreover,

the gang members who harassed Perez-Morales before he left Guatemala did so for monetary gain,

not because Perez-Morales was a young male or a Christian. He has therefore failed to establish a

nexus between his prior harm and any statutorily protected ground.[4] Accordingly, substantial

evidence supported the denial of his application for removal.

4. Denial of Convention Against Torture Protection

Finally, Perez-Morales argues that the Immigration Judge and the Board erred in finding that

he is not entitled to protection under the Convention Against Torture. He believes that the

---

[4] Perez-Morales also asserts for the first time on petition to this court that he and the other members of his immediate family constitute a protected social group that gangs have targeted in the past and will more likely than not target in the future. While Perez-Morales and his family were the victims of harassment and theft, "random criminal act[s]" – especially in a country struggling with pervasive criminal lawlessness – are insufficient for a finding of persecution. *Lumaj v. Gonzales*, 462 F.3d 574, 577-78 (6th Cir. 2006). Perez-Morales has not shown that gang members targeted him and his family on the basis of a protected status. More fundamentally, Perez-Morales failed to raise this claim before the Board and has thus deprived this court of jurisdiction to review it. *See Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004) (reasoning that "to the extent that [petitioner] has failed to exhaust his administrative remedies, this court does not have jurisdiction to address those claims").

Guatemalan government is corrupt and unable or unwilling to protect him and others from gang violence. Thus, according to Perez-Morales, his return to Guatemala will create a strong likelihood that gang members will torture him as a result of governmental acquiescence. Acquiescence by a public official triggers Convention Against Torture protection if "the public official, prior to the activity constituting torture, ha[s] awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. §1208.18(a)(7). In Guatemala, however, the government has taken steps to address the country's gang problem. We agree with the Board that difficulty in curbing gang violence is hardly commensurate with tacit consent or willful blindness to that violence. The Immigration Judge and the Board appropriately denied Perez-Morales's Convention Against Torture application.

In light of the foregoing, the decision of the Board is AFFIRMED.

**CLAY, Circuit Judge, concurring.** I join the majority's opinion to deny Perez-Morales's petition. In doing so, as observed by the majority, we review questions of law *de novo* and any factual determinations under a substantial evidence standard. Beyond the discussion of the standard of review and statement of facts set forth by the majority, I write separately regarding certain other legal and factual bases for the denial of the petition.

## I. Due Process

Due process "demands a reasonably accurate and complete transcript to allow for meaningful appellate review and to allow the alien to mount a challenge to the proceedings conducted before the IJ." *Shewchun v. Holder*, 658 F.3d 557, 569 (6th Cir. 2011) (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006)). However, an "error in the record or transcript does not by itself present a due process violation." *Sterkaj*, 439 F.3d 273 at 279 n2.

The government is obligated to prepare a "reasonably accurate and complete record of the removal hearing." *Sterkaj*, 439 F.3d at 279; 8 U.S.C. § 1229a(b)(4). Upon review of the IJ transcript, Perez-Morales is correct to point out the 149 "indiscernable" notations in the transcript; however, Perez-Morales "bears the heavy burden of proving prejudice in order to show a due process violation in an immigration hearing." *Shewchun* 658 F.3d at 569 (citing *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir. 2007)). A review of the record shows that Perez-Morales has not met his burden to prove how the incomplete transcript caused actual prejudice that would change the outcome of the case. While the "indiscernable" notations are a distraction, one may reasonably infer the responses provided by Perez-Morales.

Perez-Morales alleges that a complete transcript would support his ineffective assistance of counsel claim. However, upon review of the transcript, this claim appears to be without merit. It is possible to fully comprehend the details of the meeting with the attorney, and there is no evidence to support Perez Morales's ineffective assistance of counsel claim. Further, it is possible to infer that a meeting took place with an attorney in Detroit but Perez-Morales was unable to recall the name of the attorney. The attorney purportedly told Perez-Morales that he could not file for asylum, but no further explanation was provided. A review of the transcript indicates that Perez-Morales did not describe in detail how his personal experiences in Guatemala support his application for asylum.

## II. Withholding of Removal

Perez-Morales also claims that he is eligible for withholding of removal because he experienced persecution on account of his membership in a social group, which he defines as young, Christian males susceptible to recruitment into the Guatemalan gangs. Perez-Morales submits country reports, news articles, and other country specific information published by the State Department about the presence of gangs in Guatemala as well as the problem of police corruption as evidence that he would be persecuted on the basis of his membership in a social group. He argues that these articles demonstrate a well-founded fear of future persecution and that it is unsafe for him to return to his native country. Perez-Morales also references reports that discuss how gangs specifically target and attack Christians.

We review an IJ's interpretation of country conditions for whether the IJ reached a "reasonable conclusion." *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007). The applicant is required to identify "evidence that compels the opposite conclusion" before we disturb the IJ's

treatment of country condition reports. *Id*. at 544. In the instant case, the IJ properly considered the country specific information and concluded that the Guatemalan government substantially reduced fears of persecution by controlling the gang problem. The country reports and news articles are unpersuasive as it is unclear how these reports support Perez Morales's persecution claim. Additionally, the letter submitted by Perez-Morale's sister merely discusses a fear of future crime but it does not identify specific instances of gang violence upon the family to support his claim for asylum. These reports neither corroborate Perez-Morales's fear of gang activity nor compel a finding that its more likely than not that Perez-Morales would face persecution if he returned to Guatemala.

### III. Convention Against Torture

Under the CAT, removal must be withheld if it is "more likely than not" that [the applicant] would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208. 16(c)(2). In order to succeed on a withholding of removal claim, an applicant "must show a 'clear probability' of persecution." *Dugboe v. Holder*, 644 F.3d 462, 472 (6th Cir. 2011) (citing *Liti v. Gonzales*, 411 F. App'x 631, 640–41(6th Cir. 2005)).

If the BIA adopts the IJ's decision, as in the present case, denying Perez-Morales's withholding of removal claims under the INA and the CAT, we review "the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006). We must uphold the IJ's denial of withholding under the CAT unless it is "manifestly contrary to the law." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001).

Perez-Morales contends that the IJ erred in its decision to deny his claim for protection under CAT. First, he states that the IJ ignored evidence of government corruption, which he claims

directly impacts the country's ability to reduce gang-related criminal activity. Second, Perez-Morales states that the BIA incorrectly concluded that the government's involvement to reduce gang activity removes any duty to protect him from harm. Perez-Morales argues that the government's awareness actually "bolsters [his] claim of acquiescence by the Guatemalan government." Even if the government has taken preventative measures to reduce gang activity, Perez-Morales still did not meet his burden of showing that the Guatemalan government willfully accepts the gang involvement in criminal activity. Perez-Morales "must do more than show that the officials are aware of the activity but are powerless to stop it. He must demonstrate that . . . officials are willfully accepting of the guerillas' torturous activities." *Amir*, 467, F.3d at 927 (internal citation omitted). In the present case, the government's commitment to reduce gang violence is not an indication that it acquiesces or is accepting gang violence, but rather is evidence of the government taking action to prevent future criminal activity in the country.