NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0865n.06

Case No. 14-3270

FILED
*Nov 17, 2014*
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

TONIN BRUSHTULLI,                                     )
                                                      )
         Petitioner,                                  )
v.                                                    )    ON    PETITION    FOR    REVIEW
                                                      )    FROM   THE    UNITED    STATES
ERIC H. HOLDER, JR.,                                  )    BOARD    OF    IMMIGRATION
                                                      )    APPEALS
         Respondent.                                  )
                                                      )    OPINION
                                                      )
                                                      )

**BEFORE:  MERRITT, GIBBONS, DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge**.    Petitioner Tonin Brushtulli

("Brushtulli") seeks judicial review of a Board of Immigration Appeals ("BIA") decision finding

that his application for asylum was frivolous.  For the reasons stated herein, we **AFFIRM**.

I.

Brushtulli is a citizen of Albania who first entered the United States on August 6, 2007

on a non-immigrant K-1 fiancé visa. Brushtulli married his fiancée, Stephanie Ann Sprinkle

("Sprinkle"), a United States citizen, on August 29, 2007.  On November 15, 2007 Brushtulli

applied to adjust his status to that of a lawful permanent resident, based on his marriage to

Sprinkle. *Id.*  After filing his application, Brushtulli departed the United States on June 21, 2008,

to return to Albania to visit his ailing sister.  On July 22, 2008, Brushtulli was paroled back into

the United States for the adjudication of his application to adjust status. Sprinkle, whose attendance was required, failed to appear at Brushtulli's adjustment of status interview. The marriage had deteriorated allegedly as a result of Sprinkle's alleged abuse of drugs and alcohol. Brushtulli's application for adjustment of status was denied on August 12, 2008. Consequently, on August 14, 2008, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Brushtulli with removability under 8 U.S.C. § 1182(a)(7)(A)(i), for remaining in the United States without authorization. Brushtulli failed to appear for his scheduled master calendar hearing on December 23, 2008, and the Immigration Judge ("IJ") ordered him removed in absentia based on documentary evidence from DHS.

Brushtulli moved to reopen proceedings claiming that he had failed to appear because he never received the notices either because of a wrong address or because of his wife's failure to inform him. The IJ granted his motion. *Id.* Brushtulli conceded all factual allegations and did not contest removability. On April 27, 2010, Brushtulli's counsel indicated that he wished to file a Form I-589 application for relief and requested a continuance. The IJ continued Brushtulli's hearing until June 1, 2010, to permit his counsel time to prepare Brushtulli's application for relief and granted a further two week extension at the June 1, 2010 hearing.

On June 29, 2010, Brushtulli filed an application requesting asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). At that time, Brushtulli was warned of the consequences of knowingly filing a frivolous application and the IJ also provided Brushtulli and his attorney with written notice of such consequences. Brushtulli swore to the truth and correctness of his asylum application and the IJ scheduled a hearing on the merits to take place on December 1, 2010.

On November 30, 2010, Brushtulli filed an emergency motion to continue his individual hearing until after January 1, 2011, and provided documentation that he had been hospitalized for a seizure and was taking several prescription medications which would impede his ability to participate in a hearing. The IJ granted Brushtulli's motion and reset the case for July 11, 2012.

At the hearing on July 11, 2012, Brushtulli appeared before a different IJ and made some corrections to his asylum application, which he re-affirmed and re-signed. Brushtulli then requested another continuance and he and his counsel both expressed concern that Brushtulli's memory had been affected by injuries from car accidents and the side effects of medication. This time, however, the IJ denied the request for a continuance, citing the absence of any medical documentation to support Brushtulli's and counsel's assertions. After taking the witness stand, Brushtulli stated that he did not feel well because of neck and back pain. However, he agreed to testify and alert the IJ if his pain became prohibitive. Brushtulli requested one break during his testimony, which the IJ granted.

During his testimony, Brushtulli explained the premise for his application for relief: that he had a well-founded fear of persecution if he returned to Albania, and that he would be killed, jailed, or tortured by the family of Kolec Hila ("Hila"), a powerful leader of the Albanian communist party who had political and police connections. Brushtulli testified to Hila's past persecution of Brushtulli and his family because of their refusal to join Hila's political party. *Id.* The persecution included bombing Brushtulli's family home when he was nine years old, killing his mother and oldest sister. At times, Brushtulli stated that his father was also killed by the same bomb; at other times he stated that his father died in prison after one year of a fifteen-year sentence for the attempted murder of Kolec Hila. Brushtulli explained that the inconsistency over his father's death was due to his youth and varying explanations his relatives had provided

after the bombing. Brushtulli admitted at the merits hearing that his relatives "probably never told [him] the truth." A.R. 184.

At his merits hearing, Brushtulli was shown a copy of an Albanian judicial document ("Document") that stated that Brushtulli and his brother were charged with the murder of Kolec Hila but that Brushtulli was exonerated and released based on an alibi, after 14 months in prison, and that his brother was convicted and serving his sentence. Brushtulli admitted that he had provided this document to the State Department to demonstrate his innocence in support of his fiancé visa application in 2007. The Document also stated that the Brushtulli family was involved in a "blood feud"[1] with Hila's family due to Hila's affair with Brushtulli's mother. A.R.202-208.

Based on the inconsistencies between Brushtulli's testimony and the Document, the IJ found that Brushtulli lacked credibility and failed to meet his burden of proof. In an oral decision, the IJ denied Brushtulli's application for asylum, withholding of removal, and protection under the CAT. The IJ also made a separate finding of frivolousness, determining by a preponderance of the evidence that material elements of Brushtulli's application were deliberately fabricated. In so doing, the IJ found that the government had met its burden to show that Brushtulli knowingly filed a frivolous application after proper notice of the consequences of such an action.

On March 20, 2014, the BIA affirmed the IJ's decision. Brushtulli then filed this petition for timely review. On appeal, Brushtulli first argues that the IJ failed to afford him sufficient opportunity to account for any discrepancies before finding that his application was frivolous.

---

[1]There is documentation in the record regarding "blood feuds" in Albania, which are described as inter-generational revenge killings between families. The custom of blood feuds involves exacting violent reprisals between feuding families, and is prevalent in Shkoder, where Brushtulli's family lived.

Second, Brushtulli does not directly appeal the IJ's credibility finding, but argues that the credibility finding should be reviewed as part of the frivolousness inquiry. Third, Brushtulli argues that his due process rights were violated when he was denied a continuance at the July 11, 2014 merits hearing, despite his counsel's admonitions that he was in car accidents which affected his memory and speaking ability, and despite evidence that he was under medication since 2010. We review each argument in turn.

## II.

When the BIA issues an order affirming the result of the IJ's decision but not necessarily adopting the IJ's reasoning, the only "rational explanation" is that of the IJ. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). Where the BIA summarily adopts the IJ's decision but adds comments of its own, we directly review the decision of the IJ while considering the additional comments made by the BIA.[2] *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

We review the IJ's determination that an asylum application was frivolous under the substantial evidence standard, considering whether it is supported by reasonable, substantial, and probative evidence on the record. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Lazar v. Gonzales*, 500 F.3d 469, 475 (6th Cir. 2007); *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). Under the substantial evidence standard, the IJ's findings of fact, including the frivolousness determination, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B)

---

[2]Here, the BIA adopted the IJ's decision. The BIA separately addressed Brushtulli's potential adverse credibility challenge and found his argument that "he knows only what he was told as a child about why his parents were killed and that he questions the veracity of the information in the Albanian court documents," to be lacking. A.R. 3-4. The BIA also supplements the IJ's decision on the continuance issue stating that Brushtulli "has not provided any objective medical evidence suggesting he was unable to testify accurately before the Immigration Judge, and he has not explained in detail what testimony he claims was affected by his physical and/or mental state at the hearing. In this regard, we note that the respondent's direct testimony was consistent with his written statement, which was prepared in June 2010." *Id.*

To support a finding that an alien has filed a frivolous application, the court must determine, by a preponderance of the evidence based on circumstantial or direct evidence and taking into account any plausible explanations provided by the alien, that he deliberately fabricated material elements of his application. *See Matter of Y--- L---,* 24 I & N Dec. 151, 158 (BIA 2007); *see also* 8 C.F.R. § 1208.20. In *Y--- L---,* the BIA provided a set of requirements for making a frivolousness determination: (1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim. *Matter of Y--- L---,* 24 I & N Dec. at 158.

The record shows that the IJ in his oral decision of July 11, 2012, did precisely what was required by *Y--- L---.* After finding that Brushtulli had failed to meet his burden of proof in his application for relief, the IJ made a separate finding of frivolousness by determining by a preponderance of the evidence that material elements of Brushtulli's application were deliberately fabricated based on either direct or circumstantial evidence, and taking into account any plausible explanations provided by Brushtulli.

Citing to *Y--- L---,* Brushtulli argues that the IJ failed to afford Brushtulli a sufficient opportunity to account for any discrepancies in his claim before finding that his application was frivolous. *See Matter of Y--- L---,* 24 I. & N. Dec. at 155. However, the BIA has since clarified the standards described in *Y--- L---,* including "to what extent the IJ is required, if at all, to inform the applicant during the course of the proceedings that he or she is considering a frivolousness determination before he or she renders such a determination." *Biao Yang v.*

*Gonzales*, 496 F.3d 268, 279 (2d Cir. 2007). The BIA made it clear that "[w]hen the required frivolousness warnings have been given to an asylum applicant prior to the merits hearing, the Immigration Judge is not required to afford additional warnings or to seek further explanation in regard to inconsistencies that have become obvious during the course of the hearing." *Matter of B--- Y---*, 25 I. & N. Dec. 236 (B.I.A. 2010).

First we consider whether Brushtulli was given the required warnings prior to the merits hearing. We conclude he was. Indeed, two different IJs issued oral and written warnings regarding frivolousness to both Brushtulli and his counsel. On June 29, 2010, IJ Robert Newberry asked Brushtulli whether he had been over his application "line by line and word for word using what [he] believe[d] to be a competent interpreter," and whether there was "anything in the application that need[ed] to be changed, corrected, or just updated," to which Brushtulli responded "yes" and "no" respectively. IJ Newberry then issued an oral warning as to the consequences of knowingly filing a frivolous asylum claim, and specifically said that "[a] frivolous application contains statements or responses to question[s] that have been deliberately fabricated." A.R.133. On July 11, 2012, at the merits hearing, IJ David Paruch admitted as evidence the frivolousness warnings issued by IJ Newberry on June 29, 2010, after confirming that Brushtulli's counsel was in receipt of the warning. IJ Paruch did not re-issue the frivolousness warning but did ask Brushtulli to re-sign his application after reaffirming that the contents of his application, including the attached documents and supplements, were all true and correct to the best of his knowledge. The record therefore shows that Brushtulli had received frivolousness warnings in advance of his July 11, 2012 merits hearing.

Next we consider whether the inconsistencies in Brushtulli's testimony became obvious prior to, or during the course of, the merits hearing. Citing *Alexandrov v. Gonzales*, Brushtulli

argues that he was unfairly confronted with the Albanian judicial document which formed the primary basis of the inconsistencies at the merits hearing. *See Alexandrov v. Gonzales*, 442 F.3d 395, 407 (6th Cir. 2006).

In *Alexandrov*, a Bulgarian asylum-seeker was confronted for the first time during his merits hearing with two memoranda prepared by the United States Embassy in Bulgaria which questioned the authenticity of some of the documents supporting his application. *Id.* at 400. One of the memoranda was issued on the same day as his merits hearing. *Id.* at 407. Furthermore, there was no information as to who conducted the investigation leading to the memoranda, how, or under what circumstances. *Id.* ("We do not know who the investigator was or if there was more than one investigation or the qualifications of a supposed investigator. . . We do not know whether a Bulgarian investigator was used. We do not know how the investigation was conducted . . . There is not much that we do know aside from the apparent conclusions of the mysterious investigation.") The *Alexandrov* Court was concerned about the reliability and trustworthiness of the memoranda which formed the basis for a frivolousness determination, and vacated the finding of frivolousness in that case. *Id.*

However, unlike the applicant in *Alexandrov*, Brushtulli's first encounter with the evidence leading to the finding of frivolousness was not at his hearing. To the contrary, Brushtulli *himself* submitted the Document to the Consular office to establish the absence of criminal convictions in order to secure a fiancé visa. It follows that on June 29, 2010 and on July 11, 2012, when Brushtulli filed, signed, and affirmed the truth of an application for relief which contained statements that were directly at odds with a document that he had previously submitted to gain entry, that Brushtulli knew that some of his statements were untrue, or at the very least required explaining. Therefore, the inconsistencies in Brushtulli's application came to light prior

to his merits hearing. Furthermore, the Document was a judicial decision, and contained specific details as to the defendants, the charge, the witnesses, and the basis for the decision, in Albanian and in a notarized English translation. This makes the evidence in Brushtulli's case more reliable than the consular memorandum in *Alexandrov*.

Brushtulli's argument that he did not have time to obtain documentation regarding the truthfulness of the Document seems disingenuous. Even if Brushtulli somehow forgot that he had submitted a document with his visa application which contradicted his instant application, the record shows that Brushtulli was asked at his merits hearing for corroborating evidence to account for the inconsistencies and whether he had made any efforts to obtain such evidence. Brushtulli responded by saying that it was not possible to obtain any corroborating evidence because Albanian hospitals did not maintain medical records and it was also not possible to obtain corroborating evidence from his relatives in Albania.

We have held that the corroborating evidence requirement does not "place unreasonable demands on an applicant since supporting documentation must be provided only if it 'is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers.'" *Dorosh v. Ashcroft*, 398 F.3d 379, 382-83 (6th Cir. 2004) (quoting *Perkovic v. INS*, 33 F.3d 615, 726 (6th Cir. 1994)). In this case, Brushtulli has given no reason why he did not or could not obtain corroborating statements from his uncles or other relatives who were aware of the incidents that occurred when he was a child. In such an instance we are "bound to uphold a finding that corroborative evidence is available unless compelled otherwise," and nothing in the record compels us to believe that corroborating evidence is unavailable, as Brushtulli claims. *Urbina-Mejia v. Holder*, 597 F.3d 360, 367-68 (6th Cir. 2010) (finding that an applicant failed to corroborate his otherwise credible testimony with

available evidence when the applicant "provided no evidence that [corroborative] evidence was unavailable or even that he had requested it." Despite advance notice and considerable time to obtain corroborating evidence, Brushtulli neither explained nor made an effort to corroborate his otherwise incredible testimony. Now Brushtulli appears to be asking for another chance to explain, but unfortunately, the opportunity to do so has passed.

Brushtulli also argues on appeal that the IJ's frivolousness determination was erroneous because Brushtulli never stated that he had fabricated any of the evidence he submitted or any part of his testimony. Nor did he ever state that he had fabricated any part of his asylum application. However, there is no requirement that an applicant must confess to a fabrication before an IJ can make a frivolousness finding.

In light of the BIA's clarification in *Matter of B--- Y---*, the IJ did not fail to afford Brushtulli a sufficient opportunity to account for any discrepancies in his claim before finding his application was frivolous. Accordingly, we find the BIA's conclusion that Brushtulli knew that his documents were fraudulent to be supported by substantial evidence. *See Sterkaj v. Gonzales*, 439 F.3d 273, 277-78 (6th Cir. 2006) ("From fraudulent submissions, [t]riers of fact may presume a purpose to defraud in the absence of a persuasive explanation.").

III.

We next consider whether we may properly consider the IJ's adverse credibility finding or whether Brushtulli waived review of that issue by failing to appeal it explicitly. We review de novo questions of subject matter jurisdiction. *Lacey v. Gonzales*, 499 F.3d 514, 518 (6th Cir. 2007).

The Government has argued that Brushtulli must challenge the IJ's credibility finding separately from the finding of frivolousness, while Brushtulli argues that the credibility

challenge is included in his appeal of the IJ's frivolousness finding. Both parties discuss *Muhanna v. Gonzales*, and it may well be the case that "under 8 C.F.R. § 208.20 a finding of frivolousness does not flow automatically from an adverse credibility determination." 399 F.3d 582, 589 (3d Cir. 2005). However, the question now before us is whether a frivolousness finding necessarily meant that Brushtulli's application also lacked credibility and therefore should be reviewed along with the frivolousness finding, not whether the adverse credibility finding necessitates a frivolousness finding. *Muhanna v. Gonzales*, 399 F.3d 582, 589 (3d Cir. 2005). We do not have to answer this question because we have already held that the IJ's finding of frivolousness and the factual findings therein were conclusive. As Brushtulli himself points out, it would be ludicrous to find that an application was deliberately fabricated but that the applicant was credible in fabricating it.

## IV.

We review an immigration judge's denial of a continuance for an abuse of discretion. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). In deciding whether an abuse of discretion occurred, we "must decide whether the denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id*. (internal quotation marks and citation omitted). The regulations prescribe that an IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. We have held that finding "'good cause' is crucial since a continuance, in effect, allows an alien to remain in the United States for a period of time without any defined legal immigration status." *Maldonado-Reyes v. Holder*, 531 F. App'x 692, 694 (6th Cir. 2013) (quoting *Ukpabi v. Mukasey*, 525 F.3d 403, 407-08 (6th Cir. 2008)).

Here, the BIA's reason for its affirmance of the IJ's denial of the continuance motion was that Brushtulli provided no "objective medical evidence suggesting he was unable to testify accurately before the Immigration Judge, and he [had] not explained in detail what testimony he claims was affected by his physical and/or mental state at the hearing." A.R. 4. When Brushtulli, through counsel, requested a continuance on July 11, 2012, the record shows that all he offered was a prescription bottle and his counsel's statement to the IJ that she was "not confident that he [was] in the right state of mind to give good testimony," but that she was "not a doctor [and could not] diagnose him with anything." A.R. 148-49. Brushtulli's counsel went on to say that while she did not "feel that comfortable," if the IJ decided to move forward, "[h]e is ready to go, I am ready to go," A.R. 150. The IJ denied the motion for a continuance holding that "[e]ven with a prescription bottle…we don't have some indication of what the purpose of it is, what the side effects are, something medical that would suggest an issue here." A.R. 151. Brushtulli's counsel agreed and indicated that she understood. As the BIA further noted in its decision affirming the IJ, Brushtulli's testimony on July 11, 2012, was consistent with his written statement prepared in June 2010, when there was no indication that he was taking medications.

The denial of Brushtulli's request for a continuance did not lack rational explanation, inexplicably depart from established policies, or rest on an impermissible basis. The IJ permitted Brushtulli to take a break when he requested it. Moreover, the IJ had granted continuances in the past. We have held that where an IJ had previously granted an applicant's request for a continuance, this reason alone is a sufficient basis to affirm the IJ's denial of a further continuance. *Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008) (citing *Abu-Khaliel*, 436 F.3d at 634-35). Therefore, the IJ did not abuse his discretion in denying Brushtulli's motion for a continuance.

Brushtulli also argues that the IJ's denial of a continuance violated his due process rights. We address this argument first by noting that Brushtulli does not have an inherent due process right to a continuance, which is within an IJ's broad discretion. *Maldonado-Reyes*, 531 F. App'x at 695(citing *Abu-Khaliel*, 436 F.3d at 635)("The denial of a continuance is discretionary and therefore cannot form the basis for a due process claim."). However, due process does entitle aliens to a full and fair hearing, even while the IJ retains "broad discretion in conducting that hearing." *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003)). An applicant's due process rights are violated only when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)). To prevail on a due process challenge, Brushtulli "must demonstrate not only error, but also 'substantial prejudice,' or showing [that] the alleged violation affected the outcome of the proceeding." *Lin*, 565 F.3d at 979 (quoting *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005)). The only semblance of such a showing is one sentence in Brushtulli's reply brief, which states: "[h]ad the IJ granted a continuance, there might be no finding of frivolousness." Without more, we cannot find that Brushtulli met his burden. Consequently, the IJ's denial of a continuance did not violate Brushtulli's right to due process.

V.

For the foregoing reasons, we **AFFIRM** the decision of the BIA.