PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4271
_____


ELIAS HALIM EID;
GWEN PACKARD-EID,

Appellants

v.

JOHN THOMPSON, District Director, Newark District;
US CITIZENSHIP AND IMMIGRATION SERVICES


_____


Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-11-cv-03945)
District Judge: Honorable William J. Martini
_____


Argued September 25, 2013

Before: AMBRO, FISHER, and HARDIMAN, Circuit Judges

(Opinion filed: January 10, 2014)

Thomas E. Moseley, Esquire (Argued)
One Gateway Center, Suite 2600
Newark, NJ 07102

       Counsel for Appellants

Stuart F. Delery
Acting Assistant Attorney General
David J. Kline
Director
Jeffrey S. Robins
Assistant Director
Kirsten L. Daeubler, Esquire (Argued)
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

       Counsel for Appellees

_____

OPINION OF THE COURT
_____

AMBRO, Circuit Judge

Elias Eid and Gwen Packard-Eid filed a complaint challenging the denial by the Board of Immigration Appeals ("BIA") of the I-130 Petition for Alien Relative filed by Packard-Eid, a United States citizen, that would accord Eid,

her husband and a non-citizen, preference status as the spouse of a citizen. The BIA denied the Petition under 8 U.S.C. § 1154(c), which requires denying the petitions of aliens who had previously received or attempted to receive immigration benefits based on a marriage "entered into for the purpose of evading the immigration laws." Eid and Packard-Eid contended that, because Eid did not intend to break the law through his first marriage, § 1154(c) should not apply to him. The District Court disagreed, granting summary judgment for the Government on one count of the complaint and dismissed the remaining counts for failure to state a claim. Despite facts favoring a better result, the statute's text leads us to conclude that neither the District Court nor the BIA erred, as, among other things, the intent to enter into a marriage solely to gain immigration benefits is sufficient to establish intent to evade the immigration laws.

## I. Background

### A. Factual and Administrative Background

Eid is a Lebanese national who entered the U.S. as a non-immigrant under an H1-B visa issued based on a petition by Eid's employer Carolyn Pickett,[1] a U.S. citizen. In October 1999, Eid married Pickett and they began living together as roommates. Pickett filed an I-130 Petition the next month to have Eid legally established as her husband for immigration purposes. It was granted in December 1999.

Obtaining permanent residence based on marriage to an American citizen or legal permanent resident is a multi-step process. First, the citizen or permanent resident spouse

---

[1] Pickett is referred to in parts of the administrative record as Carolyn Rumsey, the name she used during a previous marriage.

3

must sponsor the alien by filing an I-130 Petition (if granted, it legally classifies the alien as the spouse of the sponsor). Once (or at the same time as) the sponsor files an I-130 Petition, the alien must file an I-485 Application to Register Permanent Residence or Adjust Status.

On the basis of his classification as Pickett's husband, per the granting of the I-130 Petition, Eid filed an I-485 Application. During his interview with the Immigration and Naturalization Service ("INS") in February 2001 as part of the application for permanent residence, and presumably in response to immigration officers questioning the legitimacy of the marriage, Eid withdrew his I-485 Application. At the same time, Pickett requested the withdrawal of her I-130 Petition already granted in 1999, a request the CIS granted. Accompanying the withdrawal of the I-485 application, both Eid and Pickett gave sworn affidavits to the INS officer. In his sworn statement, Eid said that he married Pickett in order to stay in the U.S., the marriage was never consummated, and the two had "no intention on living together as husband and wife." Pickett's sworn statement was to similar effect. Their marriage was annulled in December 2002.

Removal proceedings began against Eid in December 2001. In November 2003, he married Packard-Eid, an American citizen, with whom he had a son in 2006. Packard-Eid filed a new I-130 Petition on Eid's behalf in September 2004. Citizenship and Immigration Services (the "CIS") determined the marriage of Eid and Packard-Eid (collectively the "Eids") to be genuine, but denied the I-130 Petition in December 2006. It concluded that it must deny Packard-Eid's Petition under § 1154(c) because of Pickett's "sham" Petition on Eid's behalf and their respective statements to the INS.

Packard-Eid appealed to the BIA, which remanded to the CIS with instructions to issue a Notice of Intent to Deny

4

("NOID") and to allow the Eids to present evidence in support of the I-130 Petition. The CIS issued the NOID in July 2009. In response, Packard-Eid provided declarations from Pickett and Eid that they married out of a "naïve" belief that formal marriage and shared residence were sufficient to obtain permanent residence, along with a statement of Packard-Eid's legal arguments against the denial. The CIS denied the I-130 Petition in September 2009, and Packard-Eid appealed to the BIA. It affirmed the CIS's conclusion that § 1154(c) barred the I-130 Petition, termed Pickett and Eid's marriage "fraudulent," and dismissed the appeal.

**B. Legal Background**

The Eids filed a complaint with the District Court challenging the denial of the I-130 Petition in July 2011 and an amended complaint five months later. The first count of the amended complaint sought review of the BIA's denial of the I-130 Petition under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, while the remaining counts charged that the decision violated various constitutional provisions and international law.

Both the Eids and the CIS filed motions for summary judgment on the first count of the complaint (the "APA claim"), and the CIS filed a motion to dismiss the constitutional and international law counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The District Court granted the CIS's motion for summary judgment and dismissed the remaining counts for failure to state a claim. Eid and Packard-Eid filed a notice of appeal,

5

and in their subsequent brief they challenged both the order for summary judgment and the dismissal of the other counts.[2]

### III. Jurisdiction and Standards of Review

The District Court had jurisdiction under 28 U.S.C. § 1331. *See Chehazeh v. Att'y Gen.*, 666 F.3d 118, 139 (3d Cir. 2012) (holding that district courts have jurisdiction under the APA to review BIA decisions other than a final order of removal). We have jurisdiction under 28 U.S.C. § 1291. In cases reviewing final administrative decisions under the APA, "we review the district court's summary judgment decision de novo, while 'applying the appropriate standard of review to the agency's decision.'" *Concerned Citizens Alliance, Inc. v. Slater*, 176 F.3d 686, 693 (3d Cir. 1999) (quoting *Sierra Club v. Slater*, 120 F.3d 623, 632 (6th Cir. 1997)). Under the APA, we review agency actions to determine whether they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).[3]

---

[2] Removal proceedings against Eid continued parallel to this litigation and an immigration judge ordered Eid removed in March 2007. After appeal to the BIA, a petition for review, and remand to the immigration judge, the removal proceedings have been administratively closed pending the outcome of this appeal.

[3] The District Court erroneously categorized the Eids' APA claim as a request for review of the denial of an application for naturalization, and on that basis reviewed the Eids' non-constitutional claims *de novo* rather than under the more deferential APA standard. Because we review the District Court's legal conclusions *de novo* and conclude that it reached the correct outcome, remand is unnecessary. *Cf. S.H.*

Our Court "exercise[s] plenary review over a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6)." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012). In this review, "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In order to defeat a Rule 12(b)(6) motion, plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. Analysis

## A. APA Claim

The Eids assert several reasons why they believe the BIA's denial of the I-130 Petition was arbitrary and capricious. We deal with each in turn.

### 1. Level of Intent Required for "Purpose of Evading the Immigration Laws"

---

*v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) ("Even if the District Court applied the wrong standard of review, we may still uphold its decision if correct under the appropriate standard of review.").

The Eids' first argument is that the BIA's rejection of their I-130 Petition was improper because the statutory bar of 8 U.S.C. § 1154(c)[4] did not apply. It states in pertinent part:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into *for the purpose of evading the immigration laws* . . . .

8 U.S.C. § 1154(c) (emphasis added). At base is the level of intent necessary for a marriage to be "for the purpose of evading the immigration laws." The Eids argue specific intent to break immigration laws is required. The BIA, in contrast, concluded that Eid and Pickett's "admissions that their marriage was entered *for the sole purpose of procuring the beneficiary's lawful status* in the United States are sufficient basis" to trigger the § 1154(c) bar (emphasis added).

We defer to the BIA's reasonable interpretation of ambiguous provisions of the Immigration and Nationality Act ("INA") pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Sarango v. Att'y Gen.*, 651 F.3d 380, 383 (3d Cir. 2011). Under the familiar *Chevron* analysis, we ask first "whether Congress has directly spoken to the precise question at issue. If so, courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *United States v. Geiser*, 527 F.3d 288,

---

[4] This provision is also referred to as Section 204(c), based on its location in the Immigration and Nationality Act. We refer to it as § 1154(c) throughout.

8

292 (3d Cir. 2008) (quoting *Chen v. Ashcroft*, 381 F.3d 221, 224 (3d Cir. 2004)) (internal citations and quotation marks omitted). If, however, the statute is silent or ambiguous with respect to the question at issue, we give "controlling weight" to the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* (quoting *Chen*, 381 F.3d at 224) (internal quotation marks omitted). In this case, our first task is to determine whether the statutory language "for the purpose of evading" is ambiguous on the question of intent.

Our review for ambiguity "must begin with the text of the statute." *Swallows Holding, Ltd. v. C.I.R.*, 515 F.3d 162, 170 (3d Cir. 2008). The INA does not define the terms "purpose" or "evade." *See* 8 U.S.C. § 1101(a). When words are left undefined, we have turned to "standard reference works such as legal and general dictionaries in order to ascertain" their ordinary meaning. *Geiser*, 527 F.3d at 294. A person's "purpose" is "something that [he or she] sets before himself [or herself] as an object to be attained: an end or aim to be kept in view" – it is "an object, effect, or result aimed at, intended, or attained." *Webster's Third New International Dictionary, Unabridged* 1847 (1981). To "evade" is to "give someone the slip[,] . . . to manage to avoid the performance of (an obligation)," or to "circumvent" or "dodge." *Id.* at 787.

We could read the visa bar in § 1154(c) to apply only when the "object, effect, or result aimed at" in getting married was to violate the immigration laws. This interpretation is consistent with the Eids' assertion that § 1154(c) requires a specific intent to violate the law. But § 1154(c) also supports a reading under which specific intent is not required, a reading adopted by the only Court of Appeals to have directly considered the issue. *See Salas-Velasquez v. INS*, 34 F.3d 705, 707-08 (8th Cir. 1994). This interpretation is also reasonable, because the intended result of a *faux* marriage is

9

not to violate the law *per se*, but to obtain an immigration benefit to which a person is not otherwise entitled. Other circuit courts have suggested that intent to enter into a marriage solely to obtain immigration benefits is sufficient to trigger § 1154(c) without specifically distinguishing this intent from intent to evade the immigration laws. *See, e.g., United States v. Islam*, 418 F.3d 1125, 1128 (10th Cir. 2005) ("To obtain permanent residency, however, an alien must verify he entered into the marriage in good faith and not for the purpose of procuring his admission as an immigrant." (citing 8 U.S.C. § 1154(c); 8 U.S.C. § 1186a(b)(1)(A)(i); 8 U.S.C. § 1186(d)(1)(A)(i)(III))); *Ferrante v. INS*, 399 F.2d 98, 104 (6th Cir. 1968) ("What he did with respect to the marriage was done with the intent to gain nonquota status and not for the purpose of entering into a continuing bona fide marriage." (interpreting a previous version of § 1154(c))).

Because we believe that the statute is ambiguous with respect to the question of intent, we defer to the BIA's reasonable interpretation and hold that when the Attorney General determines that an alien was accorded or sought to be accorded immediate relative or preference status on the basis of a marriage entered into solely to obtain immigration benefits, no additional evidence of intent is necessary to subject an alien to the bar of § 1154(c). This determination requires "substantial and probative" evidence of an attempt to receive immigration benefits based on a false marriage. *See Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (BIA 1990). The Eids have never claimed that there is not substantial evidence that Eid and Pickett married to obtain immigration benefits. To the contrary, they have repeatedly acknowledged that the marriage was entirely a means to obtain the immigration benefit of permanent residency for Eid.

The Eids argue nonetheless that grave consequences such as removal should not follow from what they describe as

10

a minor violation under the doctrine of *de minimis non curat lex*. *See, e.g.*, *In re Hammond*, 27 F.3d 52, 57 n.7 (3d Cir. 1994) ("The Latin means: 'The law does not care for, or take notice of, very small or trifling matters. The law does not concern itself about trifles.'" (quoting *Black's Law Dictionary* 388 (5th ed. 1979))). However, a marriage entered into solely to obtain immigration benefits not otherwise available without the marriage has as its purpose the evasion of immigration laws, and that triggers the bar of § 1154(c). While false statements, third-party involvement, and the exchange of money may be common markers of a sham marriage, they are not necessary under the statute to make that conclusion. Their absence does not render *de minimis* an unequivocal violation such as that of Eid and Pickett. Moreover, that Eid did not receive permanent residence, and that at the time of his I-485 Application he possessed a valid H1-B visa (a non-immigrant employer-sponsored visa for foreign workers in specialized occupations), fail to make the violation *de minimis*; the statute requires neither actually receiving immigration benefits nor immediately needing them. In any event, Eid did receive "an immediate relative or preference status as the spouse of a citizen of the United States" when Pickett's I-130 Petition was granted, the exact immigration benefit § 1154(c) references. The bottom line is that, under the inflexible language of § 1154(c), merely seeking the benefit of immediate relative or preference status based on a sham marriage results in the automatic rejection of an I-130 Petition. Hence the BIA's denial of the Eids' *de minimis* argument was neither arbitrary nor capricious.

### 2. Timely Retraction

The Eids contend that the District Court should have granted their timely retraction argument. Under that theory, Eid's withdrawal of his application for permanent residency should "wash away" the attempt to garner benefits,

11

precluding the application of § 1154(c) and making the BIA's decision to apply § 1154(c) erroneous.[5] We disagree.

The basic principle of timely retraction or recantation is that where an alien voluntarily retracts a false statement before its falsehood is exposed (or about to be exposed), the effect of the false statement is cancelled out. *See Matter of M—*, 9 I. & N. Dec. 118 (BIA 1960); *see also Valdez-Munoz v. Holder*, 623 F.3d 1304, 1309 (9th Cir. 2010) ("The doctrine of timely recantation is of long standing and ameliorates what would otherwise be an unduly harsh result for some individuals, who, despite a momentary lapse, simply have humanity's usual failings, but are being truthful for all practical purposes."). Here, Pickett's "retraction" of her I-130 Petition occurred only after it had been approved and she and Eid were questioned regarding the purpose of their marriage. Even if the timely retraction doctrine were extended to include withdrawals of official forms, it would be most difficult to show that the withdrawal, after the Petition was filed (Eid "sought to be accorded" the benefit) and after the legitimacy of the marriage was called into question by immigration officials, was timely. Thus the timely retraction doctrine does not apply.

---

[5] The BIA did not discuss timely retraction in its decision, likely because it was not raised in Packard-Eid's BIA brief. However, because timely retraction was mentioned in the notice of appeal, it is considered administratively exhausted under the standards of our Court. *See Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006) ("Under the liberal exhaustion policy . . . , an alien need not do much to alert the Board that he is raising an issue.").

**B. Constitutional Claims**

### 1. Procedural Due Process

In their appellate brief, the Eids assert that the procedures for denying an I-130 Petition under § 1154(c) violate the Fifth Amendment's Due Process Clause because they do not afford an evidentiary hearing on the record before a neutral adjudicator. Because this claim was not raised before the District Court,[6] it is waived. *See In re Diet Drugs*, 706 F.3d 217, 226 (3d Cir. 2013) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." (quoting *Tri-M Grp., L.L.C. v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011)) (internal quotation marks omitted)). This makes unnecessary any decision as to the merits of the Eids' procedural due process claim.

### 2. Eighth Amendment

The Eids contend that the denial of Packard-Eid's I-130 Petition violates their Eighth Amendment rights on the ground that removal would be an unconstitutionally disproportionate penalty. *See* U.S. Const., amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Even accepting the Eids' contention that the denial of the Petition would necessarily result in removal, we are

---

[6] The Eids raised a separate due process claim based on the right to marry before the District Court, which dismissed this count of the complaint for failure to statute a claim under Federal Rule of Civil Procedure 12(b)(6). Because the Eids did not pursue the right-to-marry claim before us, we do not address it here.

unpersuaded. As removal cannot violate the Eighth Amendment because it is not a criminal punishment, *see Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure."), the denial of an I-130 Petition no doubt cannot do so, *see Barmo v. Reno*, 899 F. Supp. 1375, 1385 (E.D. Pa. 1995) (rejecting a nearly identical Eighth Amendment challenge to §1154(c)); *Stokes v. INS*, 393 F. Supp. 24, 32 (S.D.N.Y. 1975). The District Court thus did not err in dismissing this count of the complaint for failure to state a claim.

### 3. Equal Protection

Finally, the Eids assert that § 1154(c) violates the equal protection component of the Due Process Clause of the Fifth Amendment by drawing an unconstitutional distinction between groups of aliens. In particular, they argue that aliens who successfully complete marriage fraud are eligible for a discretionary waiver of removal under 8 U.S.C. § 1227(a)(1)(H), while those who merely attempt marriage fraud are not. We discern no such distinction. Section 1227(a)(1)(H) states, in relevant part:

> The provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens described in section 1182(a)(6)(C)(i) of this title, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien (other than an alien described in paragraph (4)(D)) who--
>
> (i)(I) is the spouse, parent, son, or daughter of a citizen of the United States or of an alien

14

lawfully admitted to the United States for permanent residence; and

(II) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such admission except for those grounds of inadmissibility specified under paragraphs (5)(A) and (7)(A) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.

8 U.S.C. § 1227(a)(1)(H). In lay language, § 1227(a)(1)(H) allows the Attorney General to waive in her/his discretion the removal of certain aliens who were inadmissible (that is, not eligible for legal entry into the United States) at the time they entered the country and are facing removal because they were not admissible at the time of entry. Only aliens with a United States citizen or legal permanent resident relative (such as a spouse) are eligible.

These waivers are available to aliens who were inadmissible because they committed certain kinds of immigration fraud as defined by 8 U.S.C. § 1182(a)(6)(C)(i). An alien is inadmissible under that provision if he or she, "by fraud or willfully misrepresenting a material fact, *seeks to procure* (or *has sought to procure* or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter . . . ." 8 U.S.C. § 1182(a)(6)(C)(i) (emphases added). Because of the "sought to procure" language, attempted fraud and completed fraud are equally grounds for inadmissibility under § 1182(a)(6)(C)(i). Contrary to the Eids' assertions, nothing in the text of either § 1227(a)(1)(H) or § 1182(a)(6)(C)(i) suggests that attempted and completed frauds or willful misrepresentations are not equally subject to waiver. Nor is

15

there any reason to believe that the BIA or the CIS in practice grant waivers only for such completed acts. In support of their claim, the Eids cite only the bare text of § 1227(a)(1)(H) and a single case where an alien who entered the United States based on a fraudulent marriage was *granted* a waiver, *see Vasquez v. Holder*, 602 F.3d 1003, 1010-17 (9th Cir. 2010), without any evidence of otherwise eligible aliens being *denied* waivers because their frauds or willful misrepresentations were merely attempted rather than completed. In this context, the District Court did not err in dismissing this count for failure to state a claim.[7]

## IV. Conclusion

We recognize that, by our holding on § 1154(c), we subject many aliens who, like Eid, entered a good-faith second marriage to denial of their spouse's I-130 Petition. Regrettably, this effect is the logical consequence of the absolute language of § 1154(c). Once the Government determines that it has accorded a mock marriage the benefit requested in an I-130 Petition, or even that the benefit is sought by that marriage, further Petitions are foreclosed. We thus affirm the District Court.

---

[7] Under their APA claim, the Eids similarly argued that the claimed distinction between groups of aliens was arbitrary and capricious. We reject that claim for the reasons stated above.