NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 10, 2014[*]
Decided June 24, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-3085

| | |
|---|---|
| HANI HASSAN BAYARI,<br>*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| v. | No. A095- 922- 712 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>*Respondent*. | |

**ORDER**

Hani Hassan Bayari, a 62 year-old Jordanian citizen, challenges his removal order for falsely claiming United States citizenship and lacking proper travel documents when he entered the United States. Though he admits to twice using a fake United States passport

---

[*] After examining the briefs and the record, we have concluded that oral argument is not necessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

to enter the country, he asserts that he later withdrew his claim of United States citizenship when he admitted the fraud to a federal investigator. Substantial evidence supports the agency's decision, so we deny the petition.

Bayari entered the United States on a tourist visa in 1996 and overstayed. Twice—in 1999 and 2001—he left to visit his family in Jordan and each time used a fake United States passport to reenter the United States. He married a United States citizen in 2002 (his third marriage) and based on the marriage applied for adjustment of status in 2003. In 2004, while the application was pending, the Department of Justice's Office of the Inspector General questioned Bayari in connection with an investigation into passport fraud, and he admitted using a fake passport. Notwithstanding that admission, Bayari's application for adjustment of status was approved later in 2004, and he became a lawful permanent resident. In 2007, he applied for naturalization with U.S. Citizenship and Immigration Services (USCIS).

In 2009, however, USCIS denied Bayari's application for naturalization. The agency informed Bayari that he was ineligible for citizenship on two grounds. First he had fraudulently concealed information in 2003 when he applied for permanent residency—(1) he excluded in his application any mention of the fake passport, and (2) in connection with that application, he failed to disclose his 1999 and 2001 sojourns by telling the interview officer that he had last entered the United States in 1996. The second ground for his ineligibility was misrepresenting in his 2007 application for naturalization that he had neither claimed to be a United States citizen nor lied to a United States official to enter the country.

Bayari appealed, but a USCIS field officer upheld the denial of his application for naturalization, citing Bayari's use of the fake passport, his concealment of the fraud in his applications for adjustment of status and naturalization, and his remarriage to his second wife in Jordan while remaining married to his third wife in the United States. An adjudications officer from the Department of Homeland Security then promptly issued Bayari a Notice to Appear, charging him as removable because he "falsely represented[] himself to be a citizen of the United States" to obtain an immigration benefit, 8 U.S.C. § 1227(a)(3)(D), failed to possess required suitable travel documents, *id.* § 1182(a)(7)(A)(i)(I), failed to disclose that he traveled outside the United States and used a fake United States passport to reenter, *id.* § 1182(a)(6)(C)(i), and came to the United States to practice polygamy, *id.* § 1182(a)(10)(A).

At his hearing before an immigration judge, Bayari acknowledged his knowing use of the fake passport, but argued that the IJ should excuse the fraud because he needed the passport to visit his children in Jordan. He added that he had retracted his false representation of himself as a United States citizen by admitting to twice using a fake passport; he made this admission in a 2004 interview (in connection with an independent investigation of the person who sold him the passport) with Agent Semmerling, an investigator working for the Department of Justice's Office of the Inspector General. He also contended that he was entitled to assert the defense of equitable estoppel because, he said, Semmerling told him not to discuss the fake passport with immigration officials during the pendency of the DOJ's investigation. According to Bayari, investigators did not permit him to discuss the passport with USCIS until his application for naturalization was denied.

The IJ found Bayari removable based on his knowing and willful use of a fake United States passport to enter the United States in 1999 and 2001, and his entry into the United States without valid documents. *See* 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1227(a)(3)(D). After the IJ announced his findings, Bayari asserted "for purposes of the record" that Semmerling's testimony could bolster his defense of equitable estoppel by corroborating his testimony that she told him not to discuss his use of the fake passport with USCIS. The IJ rejected the argument as irrelevant because any testimony from Semmerling about her interview with Bayari in 2004 post-dated Bayari's use of the fake passport in 1999 and 2001.

The Board upheld the IJ's conclusion that Bayari was removable for (1) using a fake passport to travel to the United States in 1999 and 2001 and (2) entering the United States without valid documents. As for Bayari's argument that he timely retracted any false claim by acknowledging his scheme to investigators, the Board found that Bayari did not voluntarily recant any prior false testimony and in fact waited years before divulging details of his circumstances, even then doing so only upon questioning during the federal investigation. The Board also agreed with the IJ's rejection of Bayari's equitable estoppel defense; any alleged misconduct on Semmerling's part, the Board explained, occurred years after the events in 1999 and 2001 and thus did not bear upon Bayari's illegal entries. The Board noted further that Bayari did not challenge the IJ's decision that he was removable for entering the United States without valid documents.

In this petition Bayari challenges the Board's rejection of his argument that he timely retracted any false representation of himself as a United States citizen. The disclosure to Semmerling in August 2004 was a timely retraction, he maintains, because it was "the first opportunity he had" to discuss the fake passport "with any U.S. government official."

The Board did not err in concluding that Bayari's disclosure to Semmerling did not qualify as a retraction. To prove that he retracted or recanted a false representation of citizenship, Bayari needed to show that he corrected the false representation "voluntarily and prior to any exposure of the attempted fraud. . . . [W]hen a person supposedly recants only when confronted with evidence of his prevarication, the amelioration is not available." *Valadez-Munoz v. Holder*, 623 F.3d 1304, 1309–10 (9th Cir. 2010) (quotations omitted). As the Board noted, however, Bayari's disclosure to Semmerling was not made voluntarily but rather was motivated by the government's investigation. *See Eid v. Thompson*, 740 F.3d 118, 125 (3d Cir. 2014) (retraction prompted by government investigation insufficient); *Lazar v. Gonzales*, 500 F.3d 469, 473, 478 (6th Cir. 2007) (confession of false statements motivated by government's submission of contrary evidence insufficient). Moreover, the Board noted, Bayari's disclosure came too late—five years after he first used the fake passport to successfully reenter the United States in 1999 and three years after he repeated the offense in 2001. *See Eid*, 740 F.3d at 125 (withdrawal of petition containing false statement untimely where petition had already been approved).

Bayari also presses a variant of the estoppel argument—namely that the government was equitably estopped from charging him with falsely representing himself as a United States citizen because Semmerling instructed him not to discuss the fake passport with immigration officials. He arguably failed to preserve this argument by not presenting it first to the agency, *see Aguilar-Mejia v. Holder*, 616 F.3d 699, 704 (7th Cir. 2010), but even if Bayari did preserve this challenge, his argument is a non-starter. He ignores the "open question" whether equitable estoppel may even apply against the government to prevent it from enforcing the law. *Matamoros v. Grams*, 706 F.3d 783, 793–94 (7th Cir. 2013) (quotations omitted); *see also Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422–23 (1990); *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984); *Solis-Chavez v. Holder*, 662 F.3d 462, 471 (7th Cir. 2011). And even assuming that the defense could apply, Semmerling's conduct in 2004 was irrelevant, as the IJ and Board found, because it postdated Bayari's false representation of himself in 1999 and 2001 as being a United States citizen.

Relatedly, Bayari contends that the IJ denied him a "full and fair hearing" by deciding his case without allowing him to call or cross-examine Semmerling as a witness. He asserts that he followed Semmerling's guidance "to his detriment" and that her testimony about their interview in 2004 could have an "impact" on his defenses. But again, as the IJ and Board found, Semmerling's testimony regarding the 2004 interview would not bear upon whether Bayari illegally entered the United States years earlier in 1999 and 2001.

Lastly, to the extent that Bayari wishes to challenge the alternative basis for the removal order—entering the United States without proper travel documents, *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I); *Estrada-Canales v. Gonzales*, 437 F.3d 208, 219, n.12 (1st Cir. 2006); *Perez-Rodriguez v. I.N.S.*, 3 F.3d 1074, 1079 (7th Cir. 1993)—he has forfeited any challenge by not developing an argument before the Board or us, *see Aguilar-Mejia*, 616 F.3d at 704.

Because Bayari's appeal lacks merit, we **DENY** the petition for review.