**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2328
_____


BRADD GOLD, individually and on behalf
of all others similarly situated,
                                        Appellant


v.


FORD MOTOR COMPANY;
FORD MOTOR COMPANY CAPITAL TRUST II



On Appeal from the United States District Court
for the District of Delaware
(D. C. No. 1-10-cv-00587)
District Judge:  Honorable Leonard P. Stark



Argued on April 8, 2014

Before:  AMBRO, JORDAN and ROTH, Circuit Judges

(Opinion filed: August 15, 2014)

Norman M. Monhait, Esquire **(Argued)**
P. Bradford deLeeuw, Esquire
Rosenthal, Monhait & Goddess
919 North Market Street
Suite 1401
Wilmington, DE 19801

        Counsel for Appellant

Sean M. Marotta, Esquire   **(Argued)**
Christopher T. Handman, Esquire
Hogan Lovells US
555 Thirteenth Street, N.W.
Columbia Square
Washington, DC 20004

Stuart J. Baskin, Esquire
Christopher R. Fenton, Esquire
Jerome S. Fortinsky, Esquire
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

Jon E. Abramczyk, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

　　　　　Counsel for Appellees

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

Bradd Gold appeals the District Court's orders granting defendants', Ford Motor Company (Ford) and Ford Motor Company Capital Trust II (the Trust), motion to dismiss under Fed. R. Civ. P. 12(b)(6) and denying Gold's motion to amend.  We will affirm.

## I.　　Background

This case concerns whether Ford and the Trust violated Section 10(b) of the Securities Exchange Act of 1934 by failing to comply with a ten-day notice requirement under SEC Rule 10b-17.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-17, before they

announced a distribution of trust preferred securities. In 2002, Ford created a Delaware statutory business trust to raise capital through the issuance of 90 million trust preferred securities. Gold purchased approximately 21,800 trust preferred securities. The Trust used the proceeds from the sale to purchase debentures from Ford. Under the debenture contract, Ford makes quarterly interest payments to the Trust on the debentures, and then the Trust distributes the interest payments in quarterly payments to the holders of the trust preferred securities. In addition, Ford can exercise an option to defer quarterly interest to the Trust for a maximum of 20 quarters.

In April 2009, Ford exercised its right to defer interest payments on the debentures to the Trust; the Trust then deferred the quarterly payments to the security holders, including Gold. On June 30, 2010, at 8:59 a.m., Ford announced that it would resume payments to the Trust and make payments on the previously deferred distributions on July 15, 2010, to the June 30 record holders—the owners listed in the Trust's books as of June 30. The record holder of a security on the record date, however, is not necessarily entitled to retain a distribution. Rather, the New York Stock Exchange (NYSE), or other relevant exchange, independently sets what is known as an "ex-distribution date," which determines who is entitled to a distribution when a security is sold close in time to the distribution. If the security is purchased on or after the ex-distribution date, the seller may retain the distribution; however, if the security is purchased before the ex-distribution date, the seller must give the distribution to the buyer. Although the NYSE traditionally sets the ex-distribution date as two business days prior to the record date, it has discretion to set a different ex-distribution date. NYSE Rule 235.

3

The NYSE announced on June 30, 2010, at 1:20 p.m., that the ex-distribution date for the Trust's distribution would be July 1, 2010. Sales on June 28, 29, and 30 would include a "due bill," requiring the sellers of the Trust's securities on those three days to pass on the distribution payments to the buyers of their securities. On June 30, after Ford's distribution announcement, but before the NYSE set the ex-distribution date, Gold sold 13,800 trust securities. Because his sales occurred before the July 1 ex-distribution date set by the NYSE, and during the "due bill period," Gold was not entitled to the July 15, 2010, distribution for the 13,800 trust securities he sold.

On July 8, 2010, Gold filed a Complaint in the District of Delaware in his capacity as an individual shareholder and on behalf of a purported class, alleging that Ford and the Trust violated Section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b). On November 15, 2010, Gold filed an Amended Complaint asserting that Ford's decision to announce the July distribution on the same day as the record date violated Rule 10b-17, which requires the issuer to inform the National Association of Securities Dealers, Inc., now the Financial Industry Regulatory Authority (FINRA), of the record date for a distribution "no later than 10 days prior to the record date." 17 C.F.R. § 240.10b-17. Ford and the Trust moved to dismiss the Amended Complaint. The District Court granted the motion, holding that Gold failed to plead loss causation. *See Gold v. Ford Motor Co.*, 852 F. Supp. 2d 535, 541 (D. Del. 2012).

On April 27, 2012, Gold moved to amend his Complaint, submitting a Proposed Amended Complaint. The District Court denied the motion, determined that there is no private right of action under Rule 10b-17, and found that the Proposed Amended

4

Complaint failed to adequately plead loss causation and scienter.  *See Gold v. Ford Motor Co.*, 937 F. Supp. 2d 526, 532 (D. Del. 2013).  Gold appealed.

## II.    Standard of Review[1]

We exercise plenary review over a District Court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Eid v. Thompson*, 740 F.3d 118, 122 (3d. Cir. 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)).  We review a district court's denial of leave to amend a complaint for abuse of discretion.  *Renchenski v. Williams*, 622 F.3d 315, 324-25 (3d Cir. 2010).

## III.    Discussion

Gold argues that Ford and the Trust violated section 10(b) of the Securities Exchange Act by failing to comply with SEC Rule 10b-17.  Section 10(b) makes it unlawful (1) to "use or employ … any manipulative or deceptive device or contrivance," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of [Securities and Exchange Commission] rules and regulations."  15 U.S.C. § 78j(b); *see also McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing and quoting 15 U.S.C. § 78j(b)).  The Supreme Court has identified six required elements of a Section 10(b) action:  (1) a material misrepresentation or omission, (2) scienter, (3) a

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa; we have jurisdiction under 28 U.S.C. § 1291.

connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

We hold that Gold's Amended Complaint fails to plead scienter. In addition, his Proposed Amended Complaint fails to adequately plead scienter and, thus, amendment would be futile.[2] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal citations omitted).

The Private Securities Litigation Reform Act (PSLRA) established a heightened pleading requirement for Section 10(b) securities fraud cases: "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The "PSLRA alters the normal operation of inferences under Fed. R. Civ. P. 12(b)(6)" by requiring a strong inference of scienter. *In re Digital Securities Litig.*, 357 F.3d 322, 328 (3d Cir. 2004) (internal citations omitted). A complaint survives a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Under the PSLRA, a plaintiff properly pleads scienter by alleging facts that "constitute circumstantial evidence of either reckless or conscious behavior." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 276-77 (3d Cir. 2009) (internal

---

[2] Because we hold that Gold failed to plead scienter, we need not reach whether Rule 10b-17 includes a private right of action or whether Gold adequately pleaded loss causation. *See Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011) (internal citations omitted) ("We may affirm a district court for any reason supported by the record.").

citation and quotation marks omitted). Indeed, "motive and opportunity may no longer serve as an independent route to scienter." *Id.* at 277.

Gold argues that Ford and the Trust acted recklessly or consciously disregarded an obvious risk of misleading the public by failing to provide the ten-day notice to FINRA. Gold points to Ford's history of complying with the Rule 10b-17 notice requirement as showing Ford and the Trust's knowledge of a "bright line legal rule" and a "deliberate choice to disregard a known legal requirement." We disagree. Ford's prior compliance with the ten-day notice requirement does not reasonably allow a "strong inference" that its failure to provide the notice on one occasion was the result of conscious misbehavior. This speculation is insufficient under *Twombly*/*Iqbal* and Rule 12(b)(6)—let alone the heightened pleading requirements under the PSLRA. Simply put, missing a deadline is not scienter.

Gold contends that, because the SEC regulation states that it constitutes a "manipulative or deceptive device or contrivance" to fail to give notice, it follows that Ford's failure to provide the notice must also be conscious misbehavior. This assertion speaks too broadly about Rule 10b-17, and would mean that every violation of the notice requirement establishes scienter. Scienter, however, is an additional statutory requirement imposed by the PSLRA. 15 U.S.C. § 78u-4(b)(2). We cannot accept that every violation of Rule 10b-17 is manipulative or deceptive such that it constitutes conscious misbehavior that establishes scienter.

Nor do we accept Gold's argument that Ford and the Trust acted recklessly. Recklessness is "an extreme departure from the standards of ordinary care, and which

7

presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Avaya*, 564 F.3d at 267 n.42 (internal citation and quotation marks omitted). The facts in the Amended Complaint and Proposed Amended Complaint do not allege an extreme departure from ordinary care. Ford missed a deadline, but negligence is not scienter. *See McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979).

Thus, we conclude that the District Court did not err in dismissing Gold's Amended Complaint and did not abuse its discretion in denying Gold's leave to amend.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

8