**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3751
_____

ALAN SCHMIDT

v.

JOHN A. SKOLAS; LEANNE KELLY; JOHN L. ARMSTRONG, JR.;
ZOLA B. HOROVITZ, Ph. D.; OSAGIE O. IMASOGIE;
MITCHELL D. KAYE; ROBERT F. SHAPIRO; PAUL K. WOTTON;
ROBERT DELUCCIA; DAVID LUCI; STEVE ROUHANDEH;
JEFFREY DAVIS; MARK ALVINO; GENAERA LIQUIDATING TRUST;
BIOTECHNOLOGY VALUE FUND, INC; LIGAND PHARMACEUTICALS, INC.;
XMARK CAPITAL PARTNERS, LLC; ARGYCE, LLC; JOHN L. HIGGINS;
GENAERA CORPORATION; SCO FINANCIAL GROUP; MARK N. LAMPERT;
DIPEXIUM PHARMACEUTICALS, LLC; MACROCHEM CORPORATION;
ACCESS PHARMACEUTICALS INC; BIOTECHNOLOGY VALUE FUND, LP;
BIOTECHNOLOGY VALUE FUND II, LP; BVF, INC; XMARK OPPORTUNITY
FUND, LP; XMARK OPPORTUNITY FUND LTD; XMARK JV INVESTMENT
PARTNERS LLC; XMARK OPPORTUNITY PARTNERS LLC

Alan W. Schmidt,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-12-cv-03265)
District Judge:  Honorable Berle M. Schiller

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2016
_____

Before:  CHAGARES, GREENAWAY, JR., and RESTREPO Circuit Judges

_____

OPINION[*]

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Alan Schmidt, a former shareholder of Genaera Corporation ("Genaera"), appeals the dismissal of his class action shareholder derivative suit under Federal Rule of Civil Procedure 12(b)(6). He alleges breach of fiduciary duty against a number of individuals and entities with respect to Genaera's dissolution. We will vacate and remand in part, and affirm in part.

I.

We write solely for the parties' benefit and recite only the facts essential to our disposition. According to the complaint, the board of directors of biotechnology company Genaera voted in April 2009 to dissolve the company. On June 4, 2009, the Genaera shareholders, including Genaera's largest shareholder, XMark Capital Partners, LLC ("XMark"), approved the dissolution. Genaera director Mitchell Kaye was an officer of XMark. The next day, XMark sold a third of its Genaera shares at a price that was 1.6 times the average selling price for recent trading days. "Upon information and belief," Schmidt alleges that sale was prearranged. Appendix ("App.") 169.

Genaera was dissolved on June 12, 2009. Its assets were transferred to a trust, pursuant to a trust agreement between Genaera and trustee Argyce LLC, an entity run by

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

John Skolas, a former Genaera CFO. Genaera shareholders received an interest in the trust. Argyce LLC allegedly sold three of Genaera's assets for less than their worth.

First, Genaera owned an interest in certain aminosterol compounds (the "Aminosterol Assets"). In July 2009, the Trustee[1] sold the Aminosterol Assets for $200,000 without public bidding. The complaint alleges that the board did not have the Aminosterol Assets appraised.

Second, Genaera owned an interest in Pexiganan, a treatment for diabetic foot infections, which it licensed to MacroChem Corporation ("MacroChem"). In 2007, MacroChem paid $1 million for the license. Under the licensing agreement, MacroChem agreed to pay Genaera approximately $7 million upon approval of clinical and regulatory milestones for Pexiganan, up to $35 million based on sales milestones, and a ten percent royalty on net sales. App. 155-56. In June 2008, MacroChem issued a press release discussing its development of Pexiganan and its belief that the medication "could fill an important unmet medical need and provide a significant commercial opportunity for [MacroChem] in an addressable market of millions of diabetic foot infections annually." App. 159. The complaint asserts the Genaera directors knew that the Pexiganan sales potential was between $100 million and $500 million annually. But, MacroChem spent only $45,110 on developing Pexiganan in 2008. As a result of MacroChem's failure to

---

[1] The Trustee is technically Argyce LLC. However, the complaint does not clearly define the term "Trustee," and in his briefs, Schmidt uses the term "Trustee" to refer to defendants Argyce LLC and Skolas, collectively. We will do the same here for consistency, but we note that as discussed infra note 4, Skolas cannot be held personally liable under a theory of gross negligence.

develop the asset, in late 2009 the Trustee terminated MacroChem's licensing agreement. On January 11, 2010, the Trustee publicly announced that it would be accepting bids for the Pexiganan license. Bids were due by February 12, 2010. Schmidt alleges this short deadline advantaged insiders. MacroChem executives Robert DeLuccia and David Luci formed an entity called Dipexium Pharmaceuticals, Inc. on January 14, 2010 that purchased the Pexiganan license for $272,500. The sale lacked the royalty or sales-milestone payment obligations of MacroChem's agreement.

Third, Genaera owned an interest in an IL9 antibody program for asthma, which it licensed to MedImmune, LLC ("MedImmune"), a subsidiary of AstraZeneca Corporation. In February 2008, Genaera indicated at an investor conference that the value of the IL9 program was $48 million. In May 2008, Genaera stated at its annual meeting that "we believe firmly that one reason AstraZeneca bought MedImmune was that they think IL9 is significant." App. 153. But by November 2009, the Trustee stated that the IL9 program value was worth a "fraction" of the earlier valuation of $33 million to $43 million. App. 172. In May 2010, the Trustee sold the IL9 program to Ligand Pharmaceuticals ("Ligand") for $2.75 million. Ligand then sold half of its interest in the program to BVF, Inc., Biotechnology Value Fund, L.P., and/or Biotechnology Value Fund II, L.P. (collectively, "BVF"), where Kaye is currently a managing director (it is not clear when he assumed that role).

Schmidt filed suit. He alleged breach of fiduciary duty against the Trustee and the directors and officers of Genaera ("D&O Defendants"), and aiding and abetting the

4

breaches by the Trustee and the D&O Defendants against Dipexium ("Dipexium Defendants"), among other claims.[2]

The District Court granted the Defendants' motions to dismiss. First, the District Court considered the breach of fiduciary duty claim against the D&O Defendants. The claim was based on allegations of wrongful dissolution and misrepresentations in the shareholder proxy that accompanied the dissolution vote. As to the former, the District Court determined Schmidt had not alleged facts sufficient to state a breach of the duty of loyalty. Despite Kaye's involvement with XMark, the District Court concluded the XMark sale of Genaera stock after the dissolution announcement did not show disloyalty. Kaye's alleged business and personal connections with the entities that purchased the IL9 asset did not establish a lack of independence either. Nor were the facts alleged sufficient, according to the District Court, to state a claim that the D&O Defendants breached their duty of care by "fail[ing] to inform themselves about alternatives" to dissolution. App. 16.

The District Court then rejected each alleged misrepresentation in the proxy statement. Schmidt asserted that the proxy bound the Genaera directors to oversee the dissolution themselves, and that the proxy promised that the directors who voted on dissolution would not benefit from it. But the District Court determined that the plain

---

[2]    The D&O Defendants include Genaera director Mitchell Kaye, Genaera director and CEO John Armstrong, Genaera director Zola Horovitz, Genaera director Osagie Imasogie, Genaera director Robert Shapiro, Genaera director Paul Wotton, and Genaera CFO, Senior Vice President, and Secretary Leanne Kelly. The Dipexium Defendants include Luci, DeLuccia, Dipexium Pharmaceuticals, Inc., and Dipexium Pharmaceuticals, LLC.

language of the proxy stated otherwise. Schmidt argued that the proxy should have disclosed the alternative option of selling the company as a whole. But Delaware law does not require directors to disclose all alternatives, the District Court concluded. Schmidt alleged that the proxy should have included more information about the value of Genaera's assets. According to the District Court, however, Schmidt did not allege that current valuations were within the board's control.

Second, the District Court considered the breach of fiduciary duty claim against the Trustee for unlawful asset sales. The District Court noted that the trust agreement limited the Trustee's liability to gross negligence. The District Court concluded that Schmidt failed to allege gross negligence with the necessary specificity. Although Schmidt alleged that the asset sales were rushed, the District Court held that the facts asserted did not support an inference of unreasonableness. Schmidt failed to allege that the sale prices of the assets were below a contemporaneous valuation or existing offer, according to the District Court.

Third, the District Court considered the claim against the Dipexium Defendants for aiding and abetting the breaches of fiduciary duty by the Trustee and the D&O Defendants. The District Court determined that Schmidt did not allege anything besides an arm's length transaction, despite the connection between Dipexium and MacroChem.

Schmidt timely appealed.

II.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and (d). We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6). Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014). We accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Id. To survive, the allegations must state a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Where the complaint alleges fraud, the "circumstances constituting fraud" must be pled with "particularity." Fed. R. Civ. P. 9(b).

III.

On appeal, Schmidt challenges dismissal of claims against the Trustee, the D&O Defendants, and the Dipexium Defendants. We will vacate dismissal of the claim against the Trustee (except for the allegations concerning the IL9 program), and affirm dismissal of the claims against the D&O and Dipexium Defendants.

A.

The District Court erred in dismissing the breach of fiduciary duty claim against the Trustee. Directors, as fiduciaries, owe shareholders a duty of care. Malpiede v. Townson, 780 A.2d 1075, 1083 (Del. 2001).[3] In the sale context, this duty is performed

---

[3] The parties agree, as do we, that Delaware law applies because that is where Genaera was incorporated. See Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 179 n.10 (3d Cir. 2005).

7

in the "service of a specific objective: maximizing the sale price of the enterprise." Id. The Trustee here owes that duty as well.[4]  See In re Toys "R" Us, Inc. S'holder Litig., 877 A.2d 975, 999 n.30 (Del. Ch. 2005) ("[W]hen a trustee or other fiduciary sells an asset for cash, his duty is to seek the single goal of getting the best available price." (quoting Paramount Commc'ns Inc. v. Time, Inc., No. 10670, 1989 WL 79880, at *25 (Del. Ch. July 14, 1989))); see also Wilmington Trust Co. v. Coulter, 200 A.2d 441, 448 (Del. 1964)).[5]  Fiduciaries must "possess a body of reliable evidence with which to evaluate the fairness of a transaction." Barkan v. Amsted Indus., Inc., 567 A.2d 1279, 1287 (Del. 1989).  Although there is "no single blueprint" by which a fiduciary "fulfill[s] its obligation to seek the best value reasonably available to the stockholders," alternative options are often identified by "conducting an auction" or "canvassing the market." Paramount Commc'ns Inc. v. QVC Network Inc., 637 A.2d 34, 44 (Del. 1994).

The Trustee's performance here is subject to "enhanced scrutiny." Id. at 45 ("Such scrutiny is mandated by . . . the fact that an asset belonging to public stockholders

---

[4]  Schmidt argues that Skolas can be personally liable as the President and CEO of Argyce LLC because he was one of Argyce LLC's two employees, and he signed the agreement as President and CEO.  In support of his argument, Schmidt cites In re USACafes, L.P. Litig., 600 A.2d 43 (Del. Ch. 1991), which observed that fiduciary duties may be extended to those who control fiduciaries.  However, USACafes has not been applied to duty of care claims, see Feeley v. NHAOCG, LLC, 62 A.3d 649, 671-72 (Del. Ch. 2012), and so Skolas cannot be personally liable under a gross negligence theory of liability.

[5]  We acknowledge that the fiduciary duties owed by directors and trustees are not always identical.  See, e.g., Stegemeier v. Magness, 728 A.2d 557, 562 (Del. 1999). When, as here, a trustee is selling assets, the trustee, like a director, is "required to obtain the best price obtainable," unless particular circumstances exist. Wilmington Trust, 200 A.2d at 448.  Because such circumstances do not exist here, the Trustee was "bound to obtain the best price obtainable." Id.

. . . is being sold . . . .").  The enhanced scrutiny test involves:  1) inquiry into the adequacy of the decisionmaking process, "including the information on which the [fiduciary] based [its] decision"; and 2) "examination of the reasonableness of the . . . action in light of the circumstances then existing."  Id.  Under enhanced scrutiny, it is the Trustee's ultimate burden on the merits to prove that they were "adequately informed and acted reasonably."  Id.  Finally, the Trustee asserts, and Schmidt does not dispute, that the trust agreement limits the Trustee's liability to instances of "gross negligence, fraud or willful misconduct knowingly and intentionally committed in bad faith."  App. 317-18.

The Trustee refers us to the oft-quoted phrase that a fiduciary need not follow a "single blueprint" when selling assets.  Skolas Br. 25 (quotation marks omitted).  That may be so.  But the Trustee fails to identify any case involving a sale where there was no auction and no canvass of the market.  See, e.g., id. at 27 (citing cases approving short bidding periods).  Schmidt alleges that the Trustee sold the Aminosterol Assets without a public auction or an objective appraisal.  And the Trustee sold the Pexiganan license, after only a one-month bid period, to Dipexium, an entity formed three days after the Pexiganan sale period opened by executives from MacroChem (the previous Pexiganan licensee).  Dipexium's license terms were more favorable than MacroChem's.  Moreover, this appeal comes to us on a motion to dismiss.  Viewing all reasonable inferences in favor of Schmidt, and under enhanced scrutiny review, it is plausible that the Trustee acted with gross negligence and failed to maximize asset values.  For example, pursuing open bidding for the Aminosterol Assets and longer bidding for Pexiganan could have led

9

to higher sale prices. The allegations are sufficient to state a claim for a breach of the duty of care against the Trustee.[6]

Accordingly, we will reinstate the claim against the Trustee (Argyce LLC) premised on the sale of the Aminosterol Assets and Pexiganan. However, we will affirm dismissal of the allegations based on the sale of the IL9 program. Schmidt has asserted only that the Trustee sold the IL9 program, which was valued by Genaera at $48 million in 2008, to Ligand in 2009 for $2.75 million, and that Ligand then sold half of its interest to BVF, where former Genaera director Kaye is now a managing director. Allegations of the difference in valuation and the subsequent sale to an entity affiliated with a former Genaera director (a sale that did not involve the Trustee) are insufficient alone to survive a motion to dismiss.

### B.

The District Court correctly dismissed Schmidt's claim for breach of fiduciary duty against the D&O Defendants. The business judgment rule applies, and the directors' actions are presumptively valid. Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360-61 (Del. 1993). Schmidt bears the initial burden of showing a breach of the duties of care, loyalty, or disclosure. Id. at 361. He adequately alleges none.

---

[6] The Trustee also challenges Schmidt's claim that the Trustee's fees were excessive. As Schmidt points out, the trust agreement provides that the Trustee would be paid $250 per hour and one to three percent of the distributions to beneficiaries. App. 406-07. Because the $687,000 alleged in fees represents over twenty percent of the distribution, the allegations of excess are plausible and may go forward.

We also conclude that Schmidt does not sufficiently allege knowing participation by the Dipexium Defendants in order to subject them to liability for aiding and abetting the Trustee's purported violation. See Malpiede, 780 A.2d at 1096-97.

10

The duty of care requires directors to inform themselves of material and reasonably available information. Id. at 367. Schmidt includes no plausible allegations in this regard. As the District Court noted, Schmidt alleges that he himself discussed with board members alternative options for Genaera. App. 162, 165, 171.

The duty of loyalty mandates that the interests of the stockholders take precedence over any interest of a director "not shared by the stockholders generally." Cede, 634 A.2d at 361. As an initial matter, Schmidt makes no real challenge to the loyalty of the majority of board members, which "undercuts any inference that the decisions of the . . . board can be attributed to disloyalty." McMillan v. Intercargo Corp., 768 A.2d 492, 503 (Del. Ch. 2000).[7] Schmidt argues that director Kaye breached his duty of loyalty because he received his current position with BVF after favoring Ligand acquiring IL9. And, according to Schmidt, "Kaye provided BVF with propriety [sic] information about Genaera's assets which gave BVF an advantage in acquiring the IL9 Asset." Schmidt Br. 39. Schmidt additionally claims that XMark's sale of its Genaera stock at a premium in a prearranged sale after the dissolution announcement showed Kaye's interest in the unwinding. None of those speculative allegations plausibly states a claim against the D&O Defendants. The complaint includes no explanation of the information Kaye passed on to BVF or how XMark's sale of Genaera stock was prearranged. Schmidt asks

----

[7] Schmidt claims the D&O Defendants other than Kaye breached their duties because they were beholden to Kaye. That allegation is conclusory and therefore ignored in our analysis.

11

for inferential leaps beyond those permitted in the plaintiff's favor on a Rule 12(b)(6) motion.

Finally, Schmidt claims the D&O Defendants breached their disclosure duty. The duty to disclose is not an independent duty "but the application in a specific context of the . . . fiduciary duties of care, good faith, and loyalty." Malpiede, 780 A.2d at 1086. Directors must disclose what a reasonable shareholder would view as "having significantly altered the total mix of information" available. Id. (quotation marks omitted). The District Court appropriately dismissed the allegations regarding nondisclosures in the proxy statement. First, Schmidt argues, the proxy deceitfully stated that the board members who participated in the proxy vote would not materially benefit from Genaera's dissolution. Kaye did not vote, and Schmidt asserts that Kaye received a benefit through the XMark stock sale. Thus, Schmidt has not alleged a misrepresentation because the proxy says nothing about board members who did not vote on the dissolution. App. 166-67. Second, Schmidt complains that the proxy did not disclose that the shareholders could have sold Genaera as a whole and monetized its net operating loss. But it is generally known that a company can be sold as a whole, and Genaera's net operating loss was disclosed in the financial statements attached to the proxy. App. 298; see also Rodman v. Grant Found., 608 F.2d 64, 70 (2d Cir. 1979) ("In determining whether [a proxy] constituted full and adequate disclosure, the district court properly took into account information already in the public domain and facts known or reasonably available to the shareholders."). Third, Schmidt states that the proxy failed to disclose valuations for the assets. He does not identify the valuations. Fourth, Schmidt alleges

12

that the proxy did not indicate that the IL9 program development had been placed on hold by MedImmune voluntarily and would be resumed. But the complaint includes no well-pled allegations as to whether the D&O Defendants knew about MedImmune's plans or why they should have predicted the actions of another company. Fifth, Schmidt argues that the proxy failed to indicate that there existed "two active bidders" for the Aminosterol Assets. App. 165. However, interested parties were disclosed in the proxy. App. 214.

The complaint fails to state a claim for breach of fiduciary duty against the D&O Defendants. And, as a result, the Dipexium Defendants cannot be liable for aiding and abetting that insufficiently-pled breach.

IV.

For the foregoing reasons, we will vacate and remand the District Court's order dismissing the breach of fiduciary duty claim against the Trustee (except as to the IL9 program sale allegations and as to Skolas, personally), and affirm the order dismissing the remaining claims.